IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2017

**MICHAEL LYNN POSTON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for White County**
**No. CR-4761    John D. Wootten, Jr., Special Judge**

————————————

**No. M2016-01693-CCA-R3-PC**

————————————

The Petitioner, Michael Lynn Poston, appeals from the White County Criminal Court's denial of his petition for post-conviction relief from his conviction for aggravated sexual battery, for which he is serving an eleven-year sentence. On appeal, he contends that the post-conviction court erred in denying his ineffective assistance of counsel claim, that the court applied an erroneous legal standard to the ineffective assistance of counsel claim, and that the trial judge engaged in improper *ex parte* communication with the jury during its deliberations. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Brandon S. Griffin (at hearing) and Michael J. Rocco (on appeal), Sparta, Tennessee, for the appellant, Michael Lynn Poston.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; Phillip A. Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's conviction relates to the unlawful touching of his step-granddaughter. The victim's father was an employee of the trial court clerk's office. Trial counsel moved for a change of venue based upon the father's employment, and the trial court denied the motion. The Petitioner was represented by a different attorney at the trial than in the motion for a new trial. On appeal, this court affirmed the trial court's denial of the motion for change of venue. Also on appeal, the Petitioner raised an issue

regarding the trial judge's failure to recuse himself based upon his professional acquaintance with the victim's father, but this court noted the absence from the record of a motion and a hearing transcript relative to a motion for recusal of the trial judge and presumed that the trial court's ruling had been correct.[1] *State v. Michael Lynn Poston*, No. M2012-02321-CCA-R3-CD, 2014 WL 309648 (Tenn. Crim. App. Jan. 28, 2014), *perm. app. denied* (Tenn. June 20, 2014). As relevant to this appeal, the post-conviction petition and the amended petition allege that trial counsel provided ineffective assistance by failing to file a motion for recusal and that the trial judge engaged in improper *ex parte* communication with the jury during its deliberations.

At the post-conviction hearing, the trial judge was called as a witness and testified that he recalled speaking with the jury once during their deliberations. He said that he asked if they would like the court clerk to order food for them. He did not recall speaking with them any other time during the "proceedings." He said that before entering the jury room, he asked the attorneys for the State and the defense whether they objected to his asking the jury whether they wanted food and that the attorneys had not objected. When asked if he took food to the jurors, he said he did not think they requested food. When asked if an occasion arose in which the jury asked him a question during the jury's deliberations, he answered, "Never."

The trial judge testified that trial counsel filed a motion for a change of venue before the Petitioner's trial and that the court had conducted a hearing on the motion. The trial judge stated that he had reserved his ruling on the motion until completion of *voir dire*. The trial judge agreed that, ultimately, he had allowed nine peremptory challenges, rather than the "normal" eight, "because of the alternates in this case." The defense's peremptory challenge sheet was received as an exhibit, and it reflected that the defense exercised eight challenges. The trial judge did not recall trial counsel's requesting removal of an empaneled juror during the trial.

The trial judge testified that he knew the victim's father worked in the clerk's office. When asked if the victim's father handled "only child support and civil matters," the judge stated, "He is not a clerk that's assigned to this court that I've ever seen." The trial judge stated that his interaction with the victim's father was "[n]othing more" than his interactions with a court officer or a person who appeared in his courtroom. The trial judge identified trial counsel's fee claim form, which reflected that the court approved

---

[1] The Petitioner raised additional issues in the previous appeal, but they are not pertinent to his post-conviction action. In any event, this court denied relief on all issues raised in the previous appeal.

fees of over $3000, which the judge said was appropriate for a case of this nature. The judge noted that, ultimately, counsel received $1552.64.

Brenda Phillips, the Petitioner's sister, testified that she attempted to speak with trial counsel before the Petitioner's trial but that counsel never spoke with her. She said "we" attempted to speak to counsel "several times" during court breaks. She said that counsel asked "us" to call him later but that counsel did not take the calls. She said that when the Petitioner was going to a meeting with counsel regarding trial preparation, "we said tell him that we want to talk to him" but that counsel refused and did not want to talk to "us." She did not identify who, other than she, wanted to speak with counsel. Ms. Phillips said that she was not an eyewitness to the events underlying the Petitioner's conviction but that the Petitioner's wife had called her on the night of the relevant events.

Linda Powell, the Petitioner's sister, testified that she attempted to schedule meetings with trial counsel. She said he did not meet with her.

Myrna Poston, the Petitioner's wife, testified that she attempted to speak with trial counsel on several occasions. She said counsel had been present at his office about two times but that on five or six occasions, his office had been locked or an employee had advised her that he was not present. She said counsel did not follow up with her after missing the meetings. She said that during the trial, counsel appeared unconcerned about the missed meetings.

Ms. Poston testified that before the trial, Ms. Powell tried to persuade Ms. Poston not to testify against the Petitioner. Ms. Poston agreed that Ms. Powell called the victim a "lying b----." When asked if she had been pressured by the Petitioner "or people in his camp" to testify in a way other than how she ultimately testified, Ms. Poston responded, "Well it was [an] upsetting time for everybody."

The Petitioner testified that he tried to meet with trial counsel several times before the trial on January 4 of an unspecified year. The Petitioner said counsel would state that he was busy but would contact the Petitioner. The Petitioner stated that when he called counsel, counsel would state that he was going to be in Sparta on a specified date and would call the Petitioner but that counsel never called. The Petitioner stated that when he called counsel after not hearing from him on the specified dates, counsel would say that something had "come up" and that counsel was on his way back to Cookeville. The Petitioner stated that counsel eventually called him and told him to be ready to spend all day at counsel's office on January 1 through January 3 to prepare for the January 4 trial. The Petitioner stated that he arrived as instructed at counsel's office at 8:00 a.m. on January 1, that counsel arrived around 9:00 a.m., that counsel left at 9:20 a.m. after

stating he had something to do, and that counsel told the Petitioner to return the next morning. The Petitioner stated that he arrived at counsel's office at 8:00 a.m. on January 2, that counsel arrived around 8:30 a.m., that they met for about thirty minutes, and that counsel made a telephone call and stated he had to leave. The Petitioner stated that counsel was about one and one-half hours late for their meeting on January 3, that they talked for fifteen to twenty minutes, that counsel stated, "I think we've got it downpat [sic]," and that their meeting concluded. The Petitioner estimated that he met with counsel for a total of forty-five minutes to one hour on January 1 through January 3. The Petitioner stated that if counsel's fee claim reflected that they met in excess of eight or nine hours, he disputed the information on the fee claim. He acknowledged his wife's testimony that she met with counsel but had no personal knowledge of their meeting. He acknowledged that counsel advised him that if he were convicted at the trial, he would be subject to the sex offender registry, community supervision for life, 100% service of his sentence, and Range II sentencing.

The Petitioner testified that he had asked trial counsel to contact John Holtzclaw, Julie Holtzclaw, Mike Sparks, and Rhonda Grilty as potential witnesses. The Petitioner said that counsel told him to provide counsel with the witnesses' names and addresses in order for counsel to subpoena them. The Petitioner said that although he provided the information and told counsel he wanted the witnesses to testify, counsel stated "[a]t court day" that they did not need the witnesses and that the Petitioner should trust counsel. The Petitioner was unaware of counsel's ever speaking with the potential witnesses. The Petitioner said he and counsel never discussed the facts to which these witnesses could testify. The Petitioner did not know if counsel reviewed pretrial statements from the victim and another witness who had been in the home on the night of the offense. The Petitioner said he and counsel discussed the defense, which was that the Petitioner did not commit the offense. The Petitioner agreed that the defense plan was for counsel to cross-examine the victim, the Petitioner's wife, and another witness who had been in the home and for the Petitioner to testify that he did not commit the offense. The Petitioner agreed that at the trial, counsel cross-examined the victim and the Petitioner's wife and that the Petitioner testified on his own behalf. He agreed that he and the victim had been alone in a bedroom on the night of the offense.

The Petitioner testified that he spoke with trial counsel about filing a motion for recusal of the trial judge. When asked if counsel pursued the motion, the Petitioner said, "Not the way I wanted to[.]" The Petitioner agreed that counsel filed a motion for change of venue and said he had "no idea" whether counsel "follow[ed] up" on the motion for change of venue during the *voir dire* process. The Petitioner stated that although counsel exercised eight peremptory challenges, the Petitioner had wanted counsel to strike an additional juror whom counsel did not strike. The Petitioner disagreed that counsel

attempted to have this juror removed the day after jury selection. He did not recall counsel's having made a motion to have a juror removed because the juror knew the victim's father. The Petitioner said counsel did not strike the juror whom the Petitioner wanted removed.

The Petitioner testified that trial counsel did not make a timely objection when the victim testified at the trial without being sworn as a witness. The Petitioner agreed that the victim was sworn at the end of her testimony and that she stated she had testified truthfully. The Petitioner stated that every time he "had [an] answer or a question," counsel told him to trust counsel and said, "I've got this." The Petitioner said counsel never communicated any plea offers to him. The Petitioner said he was aware of "certain medical records" and wanted counsel to investigate the records but that the Petitioner was unaware of counsel's having done so. The Petitioner said the medical records were relevant, despite the lack of any allegation of penetration, because the victim had stated his fingernails had hurt her. He said the records contained statements that the victim had "not been touched." The Petitioner stated that he wanted counsel to investigate how the Petitioner and the Petitioner's wife handled their disputes but that counsel never addressed the issue with the Petitioner's wife. The Petitioner said that his behavior of having walked away from the house after arguing with his wife and after she left in his truck with the victim and another child was consistent with his habit of walking away from their arguments.

Trial counsel testified that his fee claim for the Petitioner's conviction proceedings reflected 7.9 in-court hours and 64.4 out-of-court hours. Counsel said that he was only paid for about one-half of the time he spent working on the Petitioner's case and that "at some point once you've gone over a certain number of hours, you really almost don't even keep records anymore." He said he might have worked more hours on the case than his fee claim reflected. He said the fee claim petition had been filed for him by a "service" based upon information he provided. Counsel said the fee claim reflected the following meetings with the Petitioner: 1.5 hours on April 26, 2011; an unspecified time on May 1, 2011; two hours on May 8, 2011; 1.5 hours on August 8, 2011. Counsel said the fee claim reflected six hours of trial preparation on January 2 of an unidentified year and that some of this time involved a meeting with the Petitioner and that some of it involved reviewing documents and other tasks.

Trial counsel had no notes or recollection of the Petitioner's having mentioned John Holtzclaw, Julie Holtzclaw, Mike Sparks, or Rhonda Grilty as potential witnesses. He said that none of these individuals were present at the house on the night of the crime and that the Petitioner never mentioned any fact witnesses who could testify that the offense did not occur. Counsel said, though, that he and the Petitioner discussed potential

character witnesses and that these individuals may have been the Petitioner's proposed character witnesses. Counsel said he advised the Petitioner that character witnesses would not be helpful and that the case turned on the victim's word against the Petitioner's word. Counsel said that he advised the Petitioner he was not going to call character witnesses and that the Petitioner said nothing further about the issue. Counsel thought that the Petitioner gave him a list of witnesses and that counsel had made telephone calls to locate potential witnesses.

Trial counsel testified that he talked to the Petitioner's wife and that he thought she was in a difficult position. He thought her testimony would be somewhat helpful and noted that she seemed anxious about testifying, but he did not want to call her as a witness and "ask a question you don't know the answer to . . . and then get burned." Counsel also noted that the Petitioner's wife had been in the house and that "the door was open and that was established at trial." Counsel said the Petitioner's wife stood by her statements that were in the discovery materials and that the question was whether she would be supportive of the Petitioner in her testimony. Counsel said that he knew the State would call the Petitioner's wife as a witness.

Trial counsel testified that he was aware of the Petitioner's prior felony convictions that could be used to impeach the Petitioner's credibility. When counsel was asked why he did not elect to present character witnesses to repair the Petitioner's credibility, counsel said that a few days before the trial, it was apparent the Petitioner's wife "wasn't going to buttress his character." Counsel said that if the person with whom the Petitioner lived would not vouch for his character, counsel did not want to raise the issue.

Trial counsel testified that one of the Petitioner's sisters tried to meet with counsel. He thought that he talked to her by telephone and that the information she had "was nothing." He noted that the Petitioner's sisters were not in the house on the night of the offense. He said he did not investigate the Petitioner's sisters as potential character witnesses.

Trial counsel testified that he discussed plea offers with the Petitioner, although he could not remember the details. Counsel recalled an offer that involved a lengthy sentence of more than ten years and said he had thought he would never be able to "sell" the offer to the Petitioner. Counsel said he advised the Petitioner of the possibility of being subject to community supervision for life, having to be listed on the sex offender registry, 100% service of a sentence, and the possible length of a sentence. Counsel said the Petitioner did not want to plead guilty due to the length of the sentence prescribed by

the offer and because it would ruin his marriage and his family life.  Counsel said the Petitioner maintained his innocence.

Trial counsel testified that he and the Petitioner went to an office supply store to make copies and that counsel provided the Petitioner with copies of all of the discovery materials.  Counsel said he reviewed the discovery materials with the Petitioner.

Trial counsel testified that he did not file a motion for the trial judge to recuse himself because counsel did not think the motion would be successful.  He said that the Petitioner was concerned about receiving fair treatment from the clerk's office but never spoke with counsel directly about a motion for recusal.  Counsel said that instead of a motion for recusal, he filed a motion for a change of venue.  Counsel agreed that the trial court reserved ruling on the motion until the completion of *voir dire*.  He agreed that the defense had one unexercised peremptory challenge remaining at the end of jury selection.  Counsel said he consulted with the Petitioner about prospective jurors and noted that he relied on the Petitioner's knowledge of jurors because counsel did not live in Sparta.  He had no recollection of having asked the court to excuse a juror after the jury had been selected but agreed that the trial transcript spoke for itself in this regard.  He thought the court excused this juror for cause.  Counsel said he did not raise the change of venue issue a second time because nothing that occurred in *voir dire* added to the argument for a change of venue.  He said he understood that failing to raise the issue would waive appellate review.

Trial counsel testified that he prepared for the victim's testimony and cross-examination by reviewing the victim's pretrial statement in the discovery materials.  He said he spoke to the victim's father and was aware of her family's feelings about the matter.  He said he did not speak to the victim and did not think her parents would have allowed it.  He acknowledged he had not raised the issue of the victim's not having been sworn and said he had not noticed but someone else must have noticed because she was sworn at the end of her testimony.  He agreed that the victim stated her previously unsworn testimony had been truthful.  Counsel said the trial judge summarized the victim's previous testimony, and in counsel's opinion, it would not have been helpful to the defense for the victim to have testified and to have been cross-examined again.

Trial counsel testified that calling medical providers as witnesses would not have been helpful to the defense because they would have corroborated the victim's statements to them regarding the Defendant's touching her inappropriately.  Counsel said the medical reports were not conclusive as regards to corroborating the victim's account of a touching.  Counsel said the Petitioner knew how counsel was approaching the case.

Trial counsel testified that he had been involved in many trials in which the trial judge "might stick his head" in the jury room and inquire whether the jury wanted food. Counsel did not recall the judge going into the jury room other than to inquire about food. He did not recall the judge's asking the attorneys if they objected to the judge's asking the jury if they wanted food. Counsel said, however, that he had no issue with the judge speaking with the jury about food.

Trial counsel testified that he had been disbarred. He said that his wife passed away after battling breast cancer for six and one-half years and that about six months after his wife's death, he wrote letters to his clients advising them that he was quitting the practice of law. He said he "never responded to the bar." He said that after he wrote the letters to his clients, he did not communicate with them because their questions were too stressful. He said this occurred two years after his representation of the Petitioner had concluded. He said in 2011 and early 2012, his wife's illness did not create a problem with his ability to practice law.

After receiving the proof, the post-conviction court denied relief. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

## I & II

### Ineffective Assistance of Counsel

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland*

standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner raised numerous allegations of ineffective assistance of counsel in the post-conviction court, but on appeal, he has limited his challenge to the post-conviction court's ruling that he failed to prove ineffective assistance in trial counsel's failure to file a motion for recusal based upon the trial judge's professional acquaintance with the victim's father. The Petitioner argues that trial counsel should have filed a motion for recusal and, barring that, should have obtained the Petitioner's informed written consent not to file such a motion. Relative to this issue, the post-conviction court made the following findings:

> File a motion for recusal where the victim's father was a Circuit Clerk, more accurately a Deputy Circuit Court Clerk, with whom the trial judge was acquainted. Now I want to talk about that in conjunction with venue . . . . This court could find that those issues really have been previously determined. They were addressed in the Court of Criminal Appeals opinion. Now it's true that [trial counsel] did not renew the motion for venue, that's true. But the trial judge, as the state says, tabled that and probably took it under advisement to wait and see what happened.

-9-

You know, that's what trial judges do sometimes. They want to see if we can get a jury here. Well I've reviewed the transcription of the voir dire. There is nothing that I can see in there that would trigger any trial judge to grant that motion on his own or even had it been renewed to grant it. You had, you only used eight challenges and then there's a mysterious ninth one that appears in the transcript. But really the, the Court of Criminal Appeals addressed this and even though you might want it at the time, it still rests within the sound discretion of the trial judge. Looking at this record, I don't see any reason why it should have been granted had it been renewed. So I find first of all that impliedly that failure to grant or renew the motion for a change in venue has been previously determined. And even if it hasn't, that that was not deficient on the part of [trial counsel]. That you have failed by, to meet the standard by clear and convincing evidence.

Now with regard to recusal, the Court of Criminal Appeals addressed this and the way the trial judge handled that. The clerk in this, in this county was in somewhat of an awkward position because the father of the victim worked for her. But the Court of Criminal Appeals talks about that and talks about the, shall I say the safeguards used to assure that there would be a fair trial. Indeed, the Court of Criminal Appeals and indeed [the trial judge] even reiterated today that the Deputy Clerk has nothing to do with criminal cases anyway. The clerk here was going to take it on her own, the elected clerk to make sure that she had the file, she controlled the file, all those things. And so I find that with regard to [the trial judge], he told it like it was. He's going to be friendly with everybody that he encounters. That's the nature of public life and being an elected official. But there's been no showing that there was anything untoward involving the father of the victim, the judge, or the clerk, anything like that. Indeed I find in this case that there's been no showing by clear and convincing evidence that counsel's performance was deficient. And even assuming that it was, there was no prejudice established in this instance.

At the post-conviction hearing, the Petitioner said he asked trial counsel to file a motion for recusal and that although counsel filed an unspecified motion, counsel did not pursue the issue in the way the Petitioner preferred. Counsel testified that the Petitioner was concerned about receiving fair treatment from the clerk's office but that the Petitioner never asked counsel directly to move to have the judge recuse himself from the Petitioner's case. Counsel said that he did not file a motion for recusal because he did not think it would be successful and that instead, he filed a motion for a change of venue.

We note that in the Petitioner's previous appeal, this court was unable to determine with certainty whether a motion for a change of venue was made in the trial proceedings. This court noted that the record did not contain a written motion for recusal, nor did it reflect that such a motion was made orally. This court noted, however, that in denying the motion for a new trial, the trial court stated that it had "considered the [the victim's relation to the assistant clerk] on the motion of the defendant's attorney at the time," and that "the court did not find that it had reason to recuse itself and still does not." *Michael Lynn Poston*, 2014 WL 309648, at *7. This court stated, "If there was, in fact, a motion for recusal made by the defendant, the lack of a transcript of a hearing on such motion in the record makes it impossible to conduct a meaningful review of this issue." *Id.* Ultimately, this court presumed that the trial court's ruling had been correct. *See id.*

In the post-conviction proceedings, the Petitioner alleged that no motion for a change of venue had been filed in the trial proceedings, and his allegation is supported by trial counsel's testimony that in order to address the Petitioner's concern about being treated fairly by the clerk's office, counsel elected to file a motion for change of venue instead of a motion for recusal. The evidence shows that counsel's decision was a strategic one because in his opinion, a motion for recusal would be unsuccessful. The post-conviction evidence also shows that the victim's father and the trial judge shared only a passing professional acquaintance and that the victim's father's job duties did not involve matters in the judge's court. The record reflects that counsel considered the Petitioner's concern about being treated fairly by the clerk's office and that counsel made an informed, strategic decision to address the Petitioner's concern in the way he thought held the greater possibility for obtaining relief. That his strategy was unsuccessful is not determinative of the question of ineffective assistance of counsel if the decision was an informed choice made after adequate preparation. *See Cooper*, 847 S.W.2d at 528. The post-conviction court found that the Petitioner failed to present clear and convincing evidence that counsel provided ineffective assistance with regard to a motion for recusal and a motion for a change of venue. Because the record supports the post-conviction court's determination that counsel did not provide ineffective assistance with regard to a motion for recusal, the Petitioner is not entitled to relief on this basis.

With regard to the Petitioner's argument that trial counsel was ineffective because he failed to obtain a written waiver from the Petitioner regarding counsel's not filing a motion for recusal of the trial judge, we note that the Petitioner did not pursue this theory in the post-conviction court and offered no evidence to support it. Other than a brief, general complaint, he has offered no argument in his appellate brief regarding his theory that this fell below the standard required of a criminal defense attorney. He is not entitled to relief on this basis.

In considering this issue, we have not overlooked the Petitioner's argument that the post-conviction court applied an incorrect legal standard for evaluating his ineffective assistance of counsel claim. He notes that in articulating the burden of proof, the post-conviction court stated that the Petitioner must establish clear and convincing evidence of both deficient performance and "that the deficient performance actually prejudiced the defense, or in other words that the results would have been different had other things taken place." The Petitioner complains that the proper standard for the prejudice prong of an ineffective assistance of counsel claim only required him to show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. The Petitioner is correct that the post-conviction court did not specifically use the "reasonable probability" terminology when reciting the burden of proof. We note, however, that the court referred to *Strickland v. Washington* as providing the framework for its analysis of the Petitioner's claim. Further, the court found that the Petitioner failed to carry his burden of proof relative to the deficient performance prong. Even if the court's application of the standard of proof relative to prejudice could be faulted, the Petitioner's failure to establish the deficient performance prong is fatal to his claim. *See Henley*, 960 S.W.2d at 580; *Goad*, 938 S.W.2d at 370. As such, he is not entitled to relief on this basis.

### III

### *Ex Parte* Communication

The Petitioner contends that the trial court engaged in improper *ex parte* communication with the jury by asking them during their deliberations if they wanted the clerk to order food for them. The Petitioner acknowledges that he did not raise the issue before the jury returned its verdict and that, therefore, the issue is waived under current law. He argues, however, that *ex parte* communication between judge and jury "violates either his right to confront witnesses face to face or violates his right to due process and a fair trial by an impartial tribunal."

We conclude that this issue is waived because the Petitioner failed to raise his constitutional challenge in the trial court and in the previous appeal. Tennessee Code Annotated section 40-30-106(g) provides:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

(1)  The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

(2)  The failure to present the ground was the result of state action in violation of the federal or state constitution.

The Petitioner's constitutional challenge does not fall within either of the exceptions to the general rule of waiver.  He is not entitled to consideration of the merits of this issue.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE